# United States District Court
## for the Northern District of Oklahoma

Case No. 24-cv-282-JDR-CDL

RICHARD HARJO,

*Petitioner*,

versus

RANDY HARDING, *Warden*,

*Respondent*.

## OPINION AND ORDER

Richard Harjo, a self-represented Oklahoma prisoner,[1] petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Harjo asserts that he is unlawfully detained by the judgment entered against him in Tulsa County District Court Case No. CF-1995-1024. Respondent moves to dismiss the petition asserting that this Court does not have jurisdiction to adjudicate any claims in the Petition because Harjo did not comply with 28 U.S.C. § 2244(b)'s procedural requirements for filing a second or successive petition. Considering the petition [Dkt. 1], Respondent's motion to dismiss [Dkt. 6] and supporting brief [Dkt. 7], Harjo's response [Dkt. 8], and applicable law, the Court finds and concludes that Respondent's motion to dismiss should be granted and that Harjo's petition should be dismissed without prejudice as an unauthorized second or successive petition.

---

[1] Because Harjo appears without counsel, the Court liberally construes his filings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir 1991).

Case No. 24-cv-282

I

Nearly thirty years ago, Harjo, Mike Wilson, Billy Don Alverson, and Darwin Brown robbed a local QuikTrip and murdered the store clerk, Richard Yost. Dkt. 7-4 at 2.[2] Harjo was then sixteen years old. Dkt. 7-1 at 2. The State charged each of the four men with capital murder under alternate theories of first-degree malice murder and first-degree felony murder (count one), and robbery with a dangerous weapon (count two). Dkt. 7-4 at 2; Dkt. 7 at 26-27. Harjo and Alverson were tried conjointly by dual juries, i.e., each defendant had a separate jury for the joint trial. Dkt. 7-4 at 2. Wilson and Brown were tried conjointly in a separate, dual-jury trial. *Id.* at 3. Harjo's jury found him guilty of murder under both alternate theories and guilty of robbery. Dkt. 7-1 at 3. As recommended by the jury, the trial court sentenced Harjo to life without parole for the murder and life for the robbery.[3] *Id.*

On direct appeal, the OCCA reversed and remanded, in part, with instructions for the trial court to dismiss the judgment and sentence for the robbery conviction because Harjo could not be sentenced for both felony murder and the underlying felony. *Id.* at 3-4. The OCCA affirmed the judgment and LWOP sentence for the murder conviction, rejecting Harjo's claims that (1) the dual jury procedure utilized at his trial denied him a fair trial; (2) prosecutorial misconduct denied him a fair trial; and (3) the trial court improperly excused a juror. *Id.* at 4-8. Harjo did not petition the United States Supreme Court for a writ of certiorari. Dkt. 1 at 3. His judgment and sentence thus became final on February 11, 1999, when the time expired for him to seek further direct review. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); Sup. Ct. R. 13.1; *see also Majors v. State*, 465 P.3d 223, 224 (Okla. Crim. App. 2020)

---

[2] For consistency, the Court's citations refer to the CM/ECF pagination.

[3] Harjo's codefendants also were convicted of both counts; each was sentenced to death. Dkt. 7-1 at 2 n.1.

("Since Oklahoma confers a right of appeal via statute, a criminal conviction is not final until the conclusion of the direct appeal.").

Harjo petitioned for writ of habeas corpus under 28 U.S.C. § 2254 in November 1999 ("1999 Petition"). Dkt. 7-4 at 4; *see Harjo v. Oklahoma*, No. 99-CV-0932-CVE. Harjo later amended his petition to assert two claims: (1) the dual jury process denied him a fair trial; and (2) prosecutorial misconduct denied him a fair trial. Dkt. 7-4, at 4. This court considered both claims on the merits and denied the amended petition in March 2003. *Id.*

Harjo first applied for state postconviction relief in June 2013. Dkt. 7-5. He challenged his LWOP sentence as unconstitutional based the Supreme Court's holding in *Miller v. Alabama*, 567 U.S. 460, 479 (2012) that the Eighth Amendment "forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." *Id.* He also asserted a Sixth Amendment claim alleging that trial counsel was ineffective for failing to: (1) object to his LWOP sentence, (2) present sufficient mitigating evidence to persuade the jury to impose a lesser sentence, or (3) otherwise preserve his *Miller* claim. *Id.* In October 2013, the state district court denied both claims as procedurally barred, but also rejected the *Miller* claim on the merits. Dkt. 7-7.[4] Harjo did not appeal. Dkt. 1 at 5.

Harjo again applied for state postconviction relief in May 2018. Dkt. 7-8. He again challenged his LWOP sentence as unconstitutional based on *Miller*, but also cited and discussed more recent Supreme Court, Tenth Circuit, and OCCA decisions that held *Miller* retroactively applicable to cases on

---

[4] The state district court reasoned, in part, that *Miller* did not apply retroactively on collateral review. Dkt. 7-7 at 11-13. It further reasoned, however, that *Miller*'s holding did not help Harjo because Oklahoma permits but does not require an LWOP sentence for murder and Harjo's bifurcated jury trial, wherein the State sought the death penalty, permitted the jury to exercise that discretion by considering Harjo's mitigating evidence. *Id.* at 13-16. In 2016, the Supreme Court subsequently held that *Miller* does apply retroactively on collateral review. *Montgomery v. Alabama*, 577 U.S. 190, 206 (2016).

3

Case No. 24-cv-282

collateral review and that further explained *Miller*'s holding. *Id.* Between August 2018 and January 2023, Harjo supplemented his application four times with new authority to support the *Miller* claim and with a supplemental claim based on *McGirt v. Oklahoma*, 591 U.S. 894 (2020), alleging that the State lacked jurisdiction to prosecute him because he is Indian, and he committed murder in Indian country.[5] Dkts. 7-9, 7-11, 7-14, 7-16. In March 2023, the state district court denied both claims, reasoning that Harjo's LWOP sentence did not violate the Eighth Amendment as interpreted in *Miller* and that *McGirt* does not apply retroactively to void a conviction that was final before *McGirt* was decided. Dkt. 7-17. Harjo appealed, and the OCCA affirmed the denial of his second application for postconviction relief on June 16, 2023. Dkts. 7-18, 7-19.[6]

Harjo filed his petition here on June 13, 2024. He identifies five claims. Three claims challenge the OCCA's rejection of his *Miller* claim (claims one, two, and three),[7] one challenges the OCCA's rejection of his *McGirt* claim

---

[5] In *McGirt*, the Supreme Court reviewed the OCCA's denial of an Indian defendant's request for postconviction relief and reiterated the general rule that state courts "have no jurisdiction to try Indians for conduct committed in 'Indian country.'" 591 U.S. at 898 (citing *Negonsett v. Samuels*, 507 U.S. 99, 102-03 (1993)). The *McGirt* Court then held that Congress had never disestablished the Muscogee (Creek) Nation Reservation and that, under the Major Crimes Act, 18 U.S.C. § 1153(a), "[o]nly the federal government, not the State, may prosecute Indians for major crimes committed in Indian country." *Id.* at 913, 932. In this case, the parties stipulated in state postconviction proceedings that Harjo committed murder in Indian country and that he is Indian. Dkt. 7-15.

[6] In affirming the denial of Harjo's second application for postconviction relief, the OCCA stated that the state district court properly applied state postconviction procedures by considering the *Miller* and *McGirt* claims because "[e]ach of these claims was based on an intervening change in the law." Dkt. 7-19 at 3. In so doing, the OCCA acknowledged *Montgomery*'s holding that *Miller* applies retroactively on collateral review. *Id.*

[7] The Court agrees with Respondent that claims one, two, three, and five should be considered, collectively, as one *Miller*-based Eighth Amendment claim. Dkt. 7 at 16.

4

(claim four), and one alleges he is "actually innocent" of his LWOP sentence (claim five). Dkt. 1 at 6-34.

## II

Respondent contends that the petition is an unauthorized second or successive petition under 28 U.S.C. § 2244(b) and that it should be dismissed for lack of jurisdiction. Dkt. 7 at 13-14. Respondent further contends that dismissal, rather than transfer to the Tenth Circuit for authorization, is appropriate because Harjo's claims are barred by the applicable statute of limitations in 28 U.S.C. § 2244(d)(1), even if the Court generously applies statutory tolling under 28 U.S.C. § 2244(d)(2). *Id.* at 15-19. Harjo contends that his petition is not subject to the procedural requirements of § 2244(b) or the statute of limitations in § 2244(d)(1). Dkt. 8 at 1. Alternatively, Harjo contends that if the statute of limitations applies, his petition is timely. Dkt. 1 at 36-37; Dkt. 8 at 3-7.

### A

Harjo's petition is an unauthorized second or successive petition. "A state prisoner is entitled to one fair opportunity to seek federal habeas relief from his conviction. But he may not usually make a 'second or successive habeas corpus application.' 28 U.S.C. § 2244(b)." *Banister v. Davis*, 590 U.S. 504, 507 (2020); *see also Panetti v. Quarterman*, 551 U.S. 930, 947 (2007) ("In the usual case, a petition filed second in time and not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar."). Section 2244(b) provides, in relevant part,

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

Case No. 24-cv-282

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> (3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. § 2244(b). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of [§ 2244(b)(2)]." 28 U.S.C. § 2244(b)(3)(C). If a state prisoner does not obtain permission from the court of appeals before filing a second or successive habeas petition, the district court lacks jurisdiction to adjudicate the petition and must either dismiss the petition or transfer the petition to the court of appeals for authorization. *In re Cline*, 531 F.3d 1249, 1251-52 (10th Cir. 2008) (*per curiam*).

Citing Harjo's 1999 Petition, Respondent contends that the Petition is an unauthorized second or successive petition that should be dismissed for lack of jurisdiction. Dkt. 7 at 13-14. The record supports that Harjo sought relief under § 2254 through the 1999 Petition and does not show that he either

Case No. 24-cv-282

sought or obtained permission from the Tenth Circuit to file the instant Petition.

But § 2244(b)'s procedural requirements only apply to petitions that are "second or successive," and the Supreme Court "has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application." *Panetti*, 551 U.S. at 944; *see also Magwood v. Patterson*, 561 U.S. 320, 335 n.11 (2010) ("This case does not require us to determine whether § 2244(b) applies to every application filed by a prisoner in custody pursuant to a state-court judgment if the prisoner challenged the same state-court judgment once before."). *But see Burton v. Stewart*, 549 U.S. 147, 153, 156 (2007) (concluding second-in-time habeas petition was "second or successive" under § 2244(b) because state prisoner "twice brought claims contesting the same custody imposed by the same judgment of a state court" through a 1998 petition and a 2002 petition, and "there was no new judgment intervening between the two habeas petitions").

Instead, the Supreme Court has teased out the meaning of the phrase "second or successive" largely by identifying petitions that are not second or successive. For example, the Supreme Court "determined that a habeas petition filed after an initial petition was dismissed" for failure to exhaust available state remedies "without an adjudication on the merits is not a 'second or successive' petition." *Slack v. McDaniel*, 529 U.S. 473, 489 (2000). In the death penalty context, the Supreme Court held that a second or subsequent habeas petition asserting a *Ford* claim[8] is not second or successive: (1) if the

---

[8] A *Ford* claim is a claim asserted under *Ford v. Wainwright*, 477 U.S. 399 (1986), alleging that a prisoner who was found competent to be tried, convicted, and sentenced to death should not be executed because his present mental condition has deteriorated to the

Case No. 24-cv-282

*Ford* claim previously was presented in a first habeas petition and that claim was dismissed as unripe or "premature," *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643 (1998); or (2) if the *Ford* claim is presented for the first time in a second or subsequent habeas petition filed after the *Ford* claim first becomes ripe, *Panetti*, 551 U.S. at 947. And the *Magwood* Court explained that when a second or subsequent habeas petition "challenges a new judgment for the first time, it is not 'second or successive' under § 2244(b)." *Magwood*, 561 U.S. at 324; *see also Burton*, 549 U.S. at 155-56 (rejecting petitioner's argument "that his 1998 and 2002 petitions challenged different judgments" because petitioner was in state custody pursuant to the same 1998 judgment when he filed each petition and "there was no new judgment intervening between the two habeas petitions").

Harjo's petition does not fit within any of the above-described exceptions to second or successive petitions. Unlike the petition in *Slack*, Harjo's 1999 Petition was denied on the merits, not dismissed for failure to exhaust available state remedies. Dkt. 7-4. Unlike the petitioners in *Stewart* and *Panetti*, Harjo is not reasserting claims presented in his 1999 Petition and dismissed as unripe or asserting new claims not presented in the 1999 Petition that did not ripen until after the conclusion of his first habeas proceeding. And unlike the petitioner in *Magwood*, Harjo does not bring this petition to attack a new, intervening judgment. Rather, like the petitioner in *Burton*, Harjo brings a second-in-time petition to challenge the same state-court judgment he challenged through the 1999 Petition. The Court thus finds that the petition is a second or successive petition and is subject to the procedural requirements in § 2244(b).

---

point of rendering him incompetent and therefore ineligible to be executed. *Panetti*, 551 U.S. at 935.

Case No. 24-cv-282

Harjo's petition does, however, present new claims. And in limited circumstances, a district court may consider claims brought in a second or successive petition if those claims were not presented in a prior petition. 28 U.S.C. § 2244(b)(2). But even assuming one or more of Harjo's new claims might fall within § 2244(b)(2)'s narrow exceptions, Harjo must first present his claims to the Tenth Circuit and make a prima facie showing that his claims fall within those exceptions, and the Tenth Circuit must grant him permission to file a second or successive petition *before* this Court may consider Harjo's new claims. 28 U.S.C. § 2244(b)(3)(A); *see also Case v. Hatch*, 731 F.3d 1015, 1026-27 (10th Cir. 2013) (discussing § 2244(b)'s "gate-keeping requirements" and explaining that "§ 2244 requires an applicant to pass through two gates," first by making a prima facie showing in the court of appeals, and second by making an evidentiary showing in district court). If Harjo does not obtain authorization from the Tenth Circuit, this Court does not have jurisdiction to adjudicate any claims raised in his second or successive petition. *See Cline*, 531 F.3d at 1251 ("A district court does not have jurisdiction to address the merits of a second or successive . . . § 2254 claim until [the court of appeals] has granted the required authorization."). Harjo does not argue that he obtained authorization from the Tenth Circuit to file this petition. Dkt. 1, generally. Instead, he affirmatively and incorrectly states that he has not previously filed a habeas petition challenging the same judgment that he challenges through the petition. *Id.* at 36. And he mistakenly argues that he is not required to obtain authorization. Dkt. 8. On the record presented, the Court thus finds that Harjo's petition is an unauthorized second or successive petition.

B

The only remaining question is whether the petition should be dismissed or transferred to the Tenth Circuit for authorization. *Cline*, 531 F.3d

Case No. 24-cv-282

at 1251-52. Respondent argues dismissal is more appropriate because Harjo's claims are barred by the one-year statute of limitations. The Court agrees.

State prisoners face a one-year statute of limitations for seeking federal collateral review of a state-court judgment under 28 U.S.C. § 2254. The limitations period "run[s] from the latest of" one of four dates. But different claims raised in the same petition may implicate different dates. *See Prendergast v. Clements*, 699 F.3d 1182, 1187 (10th Cir. 2012) (explaining that "§ 2244(d)(1) should be applied on a claim-by-claim basis"); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) ("[Section] 2244(d)(1) provides that a '1–year period of limitation shall apply to an *application* for a writ of habeas corpus.' (Emphasis added.) The subsection then provides one means of calculating the limitation with regard to the 'application' as a whole, § 2244(d)(1)(A) (date of final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate)."). Regardless of which event triggers the commencement of the limitations period, that period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Federal courts also may toll the limitations period for equitable reasons, *Holland v. Florida*, 560 U.S. 631, 645 (2010), and may excuse non-compliance with the statute of limitations if the petitioner asserts a credible claim of actual innocence, *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

Two limitations period are relevant here. Applying those limitations periods to the facts of this case shows that Harjo's claims are time-barred,

Case No. 24-cv-282

and Harjo's assertion of actual innocence does not excuse the untimeliness of his claims.[9]

1

First, and in most cases, a prisoner must file his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Subsection (d)(1)(A) applies to Harjo's *McGirt* claim. *See Pacheco v. Habti*, 62 F.4th 1233, 1245 (10th Cir. 2023) ("When Congress enacted the limitations period in AEDPA, it discerned no reason to provide a blanket exception for jurisdictional claims."); *Owens v. Whitten*, No. 22-5106, 2022 WL 17972141, at *1 (10th Cir. Dec. 28, 2022) (noting that case law in this circuit "make[s] clear" that "the one-year limitations period set out in § 2244(d)(1)(A), rather than the ones set out in § 2244(d)(1)(C) and/or (D), applies to *McGirt*-based challenges to the validity of state convictions").

Harjo's *McGirt* claim is untimely. As previously stated, Harjo's judgment became final in February 1999. He had one year, or until February 2000 to file timely a federal habeas petition. He did file a timely habeas petition, but he did not challenge the state court's jurisdiction to prosecute him for a crime he committed in Indian country. Dkt. 7-4.[10] And the untimely *McGirt* claim cannot be made timely through statutory tolling. Harjo's 1999 Petition

---

[9] Respondent liberally construes Harjo's petition as also asserting an argument for equitable tolling based on Harjo's allegation that his postconviction counsel abandoned him after the state district court denied his first application for postconviction for relief. Dkt. 7 at 20-22. Even if the Court were to agree with Respondent's generous construction of Harjo's petition, the Court finds that Harjo has not shown that equitable tolling renders his petition timely.

[10] Admittedly, *McGirt* did not hold until 2020 that portions of Oklahoma are Indian country. But the *McGirt* Court cited a 1993 Supreme Court decision for the proposition that states generally lack jurisdiction to prosecute Indians for certain crimes committed in Indian country. *See supra*, n.5. Thus, even in 1999, it would have been possible for Harjo to challenge the State's exercise of criminal jurisdiction.

did not toll the limitations period. *See Rhines v. Weber*, 544 U.S. 269, 272 (2005) (noting that the statute of limitations is not tolled during the pendency of a federal petition). And Harjo's postconviction applications filed in state court in 2013 and 2018 did not toll the limitations period because he filed those applications more than a decade after his limitations period under § 2244(d)(1)(A) expired in February 2000. *See Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006) ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations."). Further, Harjo's assertion that he is actually innocent does not excuse the untimeliness of the *McGirt* claim for two reasons. First, Harjo does not assert, or provide evidence suggesting, that he did not commit the murder for which he was convicted; rather, his professed "actual innocence" rests on his legal claim that he cannot be sentenced to LWOP for a murder he committed when he was a juvenile. Dkt. 1 at 28-34. Second, to the extent his assertion of actual innocence rests on the alleged absence of jurisdiction in the convicting court, that assertion too implicates legal innocence, not factual innocence. *Pacheco*, 62 F.4th at 1242-46. For these reasons, the Court finds it would not serve the interests of justice to transfer the *McGirt* claim to the Tenth Circuit for authorization.

2

Second, and less frequently, a prisoner must file his habeas petition within one year from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2244(d)(1)(C). Subsection (d)(1)(C) applies to Harjo's *Miller* claim because the Supreme Court held in *Montgomery* that *Miller* should be applied retroactively to cases on collateral review. But Harjo's *Miller* claim also is untimely.

Critically, the one-year limitations period under § 2244(d)(1)(C) begins to run on the date the Supreme Court initially recognizes the constitutional right asserted, not on the date the newly recognized right is made retroactively applicable to cases on collateral review. *See Dodd v. United States*, 545 U.S. 353, 357 (2005). In *Dodd*, the Supreme Court considered when the one-year limitations period for filing a 28 U.S.C. § 2255 motion to vacate a sentence begins to run under § 2255, ¶ 6(3)—a provision nearly identical to § 2244(d)(1)(C). *Dodd*, 545 U.S. at 356-57. The *Dodd* Court expressly rejected the argument that the one-year limitations period "runs from the date on which the right asserted was made retroactively applicable." *Id.* at 357. Rather, the *Dodd* Court held, the plain language of the provision "unequivocally identifies one, and only one, date from which the 1-year limitation period is measured: 'the date on which the right asserted was initially recognized by the Supreme Court.'" *Id.* The *Dodd* Court recognized this interpretation of the statute created "the potential for harsh results in some cases," but reasoned that it was "not free to rewrite the statute that Congress has enacted." *Id.* at 359.

As previously stated, four of Harjo's claims rely on the substantive rule announced in *Miller*, and made retroactively applicable by *Montgomery*, to argue that his LWOP sentence imposed for a murder he committed as a juvenile violates the Eighth Amendment. Dkt. 1 at 6-23, 28-33. Applying *Dodd*'s rationale, Harjo's one-year limitations period under § 2244(d)(1)(C) began on June 26, 2012, the day after *Miller* was decided, and would have expired on June 26, 2013. *See Dodd*, 545 U.S. at 357. Harjo tolled this limitations period on June 21, 2013—nearly one year after it began and with only five days left before the expiration of his one-year limitations period—when he filed his first application for postconviction relief. Dkt. 7 at 18-19; 28 U.S.C. § 2244(d)(2). But the state district court denied that application on October 1, 2013, and Harjo did not appeal. Dkt. 7-7. Thus, his limitations period began

running again on November 2, 2013, when the thirty-day period to file a notice of appeal expired, and his one-year limitations period expired five days later, on November 7, 2013. *See Gibson v. Klinger*, 232 F.3d 799, 804 (10th Cir. 2000) (holding that "regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner *could have* sought an appeal under state law" (emphasis in original)). Harjo's second application for postconviction relief, filed in 2018, was filed too late to toll his already expired one-year limitations period. *Clark*, 468 F.3d at 714. The *Miller* claim therefore is untimely.

Harjo resists this conclusion for two reasons. First, he appears to argue that he had one state postconviction proceeding pending in state court for ten years—between June 21, 2013, when he filed his first application for postconviction relief, and June 16, 2023, when the OCCA affirmed the denial of his second application for postconviction relief—and that he thus had one year from June 16, 2023, to file a timely habeas petition. Dkt. 1 at 36-37; Dkt. 8 at 3-4. Arguably, the record of state court proceedings could be viewed as supporting Harjo's apparent view that the state courts treated his second application as an amended or supplemented version of his first application.[11] But as Respondent contends, even if the record supports Harjo's view that his state postconviction proceeding spanned a decade, the fact remains that Harjo had only five days left of his one-year limitations period after the OCCA affirmed the denial of his second application for postconviction relief on June 16, 2023. Harjo's limitations period under § 2244(d)(1)(C) thus began to run again on June 17, 2023, and expired on June 22, 2023. Thus, even generously applying statutory tolling principles, the limitations period applicable to

---

[11] Conversely, the record could also be viewed as acknowledging that the state district court rejected Harjo's *Miller* claim before the Supreme Court made *Miller* retroactively applicable to cases on collateral review and that *Montgomery*, as well as intervening OCCA decisions applying *Montgomery*, supported revisiting Harjo's *Miller* claim. Under either construction of the state court record, the *Miller* claim is time-barred.

Harjo's Miller claim has expired. His claim is untimely because he did not file the petition until June 13, 2024, nearly one year after the limitations period expired.

Second, Harjo appears to argue that the Supreme Court's decision in *Jones v. Mississippi*, 493 U.S. 98 (2021), announced a new rule of substantive and procedural law while his second application for postconviction relief was pending, and, thus, provided him a later-commencing limitations period under § 2244(d)(1)(C). Dkt. 1 at 36-37; Dkt. 8 at 5-6. But *Jones* did not recognize a new constitutional right. Instead, *Jones* restated *Miller*'s holding that "an individual who commits a homicide when he or she is under 18 may be sentenced to life without parole, but only if the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment." *Jones*, 593 U.S. at 100. And *Jones* clarified that although *Miller* requires "that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing" an LWOP sentence, *Miller* and *Montgomery* both "squarely rejected" the proposition (advanced by the petitioner in *Jones*) that "the sentencer must also make a separate factual finding of permanent incorrigibility before sentencing a murderer under 18 to life without parole." *Jones*, 493 U.S. at 101, 106. As Respondent contends, *Jones* thus did not provide Harjo with a new, later limitations period under § 2244(d)(1)(C) and does not make his *Miller* claim timely.

Third, to the extent Harjo's assertion that he is "actually innocent" of his LWOP sentence could be construed as invoking *Perkins*'s equitable exception to excuse the untimeliness of the *Miller* claim, that exception does not apply. As previously discussed, Harjo asserts he is "actually innocent" based on his view that his LWOP sentence violates the Eighth Amendment. Dkt. 1 at 28-33. The *Perkins* exception, though, focuses on factual innocence, not legal innocence. *Pacheco*, 62 F.4th at 1241-46. Harjo has not shown that this exception applies to excuse the untimeliness of his *Miller* claim.

Case No. 24-cv-282

### III

The Court concludes that Harjo's petition is an unauthorized second or successive petition, that Harjo's claims are barred by the statute of limitations, and that his petition should be dismissed, without prejudice, for lack of jurisdiction rather than transferred to the Tenth Circuit for authorization to file a second or successive petition.[12] Further, because the absence of jurisdiction to adjudicate the Petition is a plain procedural bar to relief, the Court declines to issue a certificate of appealability. *Slack*, 529 U.S. at 484.

IT IS ORDERED that (1) Respondent's motion to dismiss [Dkt. 6] is granted; (2) Harjo's petition [Dkt. 1] is construed as an unauthorized second or successive petition and is dismissed, without prejudice, for lack of jurisdiction; (3) Harjo's request for an evidentiary hearing is denied; (4) a certificate of appealability is denied; and (5) a separate judgment of dismissal shall be entered in this matter.

DATED this 7th day of February 2025.

JOHN D. RUSSELL
*United States District Judge*

---

[12] Because this Court lacks jurisdiction to adjudicate the petition, the Court denies Harjo's request for an evidentiary hearing, *see* Dkt. 1 at 33.